**VAN DORN COMPANY, CENTRAL STATES CAN CO. DIVISION, Plaintiff,**

v.

**John D. HOWINGTON, et al., Defendants.**

**No. C85–1327A.**

United States District Court, N.D. Ohio, E.D.

Dec. 24, 1985.

Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, for plaintiff.

Ralph E. Cascarilla, Thomas C. Schrader, Cleveland, Ohio, for defendants.

## ORDER

BELL, District Judge.

On May 6, 1985, the plaintiff Van Dorn Company, Central States Can Co. Division (hereinafter Central States) filed the above-entitled action against Texas Can, Inc. (hereinafter Texas Can) and three of its officers. The plaintiff alleged a cause of action based upon Title IX, § 901(a) of the Organized Crime Control Act of 1970, commonly known as the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (hereinafter RICO). In addition, the complaint, as amended on July 14, 1985, asserted claims under Ohio law in which plaintiff contends defendants breached a contract between the parties, interfered with the plaintiff's business relations, breached a fiduciary duty, and misappropriated various trade secrets held by Central States.

Presently before the court is the defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for want of subject matter jurisdiction, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The defendants also seek an award of their expenses incurred in defending this action, including attorneys fees, as a sanction under Rule 11 of the Federal Rules of Civil Procedure for the filing of a complaint which defendants perceive as being one unwarranted in either fact or law.

When considering a motion to dismiss a claim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the court is constrained to accept as true the allegations in the complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 525, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983). To dismiss the complaint against the defendants, the court must find as a matter of law that the plaintiff can prove no set of facts in support of its claim which would justify the relief sought. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Therefore, a summary of the facts as set forth in the amended complaint follows.

The plaintiff is a corporation which manufacturers specialty easy-open metal cans in its plants located in Ohio, Canada and Puerto Rico. In 1981, Central States entered into discussions with the Ralston Purina Company for the purpose of evaluating and possibly purchasing Ralston Purina's Van Camp can manufacturing operation. At that time the plaintiff sought to ascertain its future requirements for cans of the types and sizes then being produced by Central States, and further to determine if the acquisition of the Van Camp can operation would enhance plaintiff's ability to supply certain other types of cans for resale to third parties. During these negotiations Central States was represented by its Senior Vice President of Sales and Marketing, defendant John D. Howington.

A portion of Central States' business involves supplying two-piece cans to tuna

packagers in Puerto Rico. In 1982 and 1983, Central States entered into contractual agreements with these tuna packagers to supply all of the customers' can requirements, including can sizes not being manufactured by the plaintiff at that time. Mr. Howington was a participant in these contract negotiations on behalf of the plaintiff. In light of the contractual obligation to supply cans to the tuna packagers, Central States, in January, 1983, proposed a long-term agreement with Ralston Purina for the purchase of cans to be resold to the plaintiff's customers.

Plaintiff contends that during the period of the negotiations between Central States and Ralston Purina, defendants John E. Koenig, John B. Wertz and Mr. Howington began the planning and preparation necessary to establish a company which would manufacture cans in direct competition with the plaintiff. Mr. Koenig had been an employee of Central States until his employment ended in May, 1983. Thereafter, Mr. Koenig acted as a consultant with the plaintiff until August, 1984. Mr. Wertz was not associated with the plaintiff in any manner.

In May, 1983, Howington, Koenig and Wertz incorporated Texas Can as a Delaware Corporation. Thereafter, Texas Can began to purchase cans from a direct competitor of Central States for re-sale to a seafood cannery in Texas. This operation was allegedly developed by Howington and Koenig while they were still employed at Central States, and was conducted by these same defendants without the plaintiff's knowledge or consent. Central States was not advised by any of the defendants of the possible business opportunity involving the selling of cans to the Texas cannery.

In June, 1983, for reasons not set forth in the complaint, Mr. Howington's employment was terminated by Central States. Also at this time, plaintiff states, Mr. Howington advised one of his subordinates at Central States to accept a job offer in Texas with the seafood cannery that was doing business with Texas Can. Thereafter, this employee left the plaintiff to accept employment at that company.

Consistent with Koenig's duties as consultant for Central States, he conducted several market studies at the plaintiff's expense. One such study involved the market for cans to be sold to cheese dip manufacturers. This study, the plaintiff contends, is a valuable trade secret which the defendants have misappropriated. It is asserted by Central States that since the defendants acquired this "very valuable and highly confidential trade secret," they have successfully outbid the plaintiff on major contracts.

Central States further alleges that, during the period of at least June, 1981 until the filing of this action, defendants have used interstate wires and mails to engage in a scheme to defraud, or to obtain by false pretense, property belonging to the plaintiff. The property in question includes Central States trade secrets, corporate opportunities, travel expenses and the working time of Mr. Koenig and other employees. These activities pursuant to the plaintiff's allegations are actions indictable under 18 U.S.C. §§ 1341 and 1343 and constitute a pattern of racketeering under 18 U.S.C. § 1961(5).

It cannot be disputed that the subject matter jurisdiction of this court hinges on whether the plaintiff's claim of a RICO violation can survive the defendants' motion to dismiss. Absent this federal claim this court cannot exercise jurisdiction over the pendant state law claims set forth in the amended complaint since there is no independent jurisdiction over the state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *Ohio Inns, Inc. v. Nye,* 542 F.2d 673 (6th Cir.1976). Thus, the sole issue before this court concerns whether the allegations stated in the amended complaint are sufficient to state a federal cause of action under RICO.

I

In enacting RICO it was the expressed purpose of Congress "to seek the eradi-

cation of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." 84 Stat. 923. *Also see United States v. Turkette,* 452 U.S. 576, 589, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981). To help achieve this purpose, Congress created a private right or cause of action with treble damages and an award of attorney fees to any prevailing plaintiff "injured in his business or property by reason of a violation of section 1962 of this Chapter." 18 U.S.C. § 1964(c).

■ In reviewing RICO claims, various courts have opined, and this court agrees, that a plaintiff must first allege that some racketeering activity has occurred. This pleading requirement is met by alleging that one or more of the subsections of 18 U.S.C. § 1962 were violated by the conduct of the defendants. *Sedima SPRL v. Imrex Co.,* 473 U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717 (8th Cir.1985); *Seville Industrial Machinery v. Southmost Machinery,* 742 F.2d 786 (3d Cir.1984); *Alcorn County Miss. v. U.S. Interstate Supplies,* 731 F.2d 1160 (5th Cir.1984) (quoting *United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir. 1983), *cert. denied sub. nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Cole v. Circle R. Convenience Stores, Inc.,* 602 F.Supp. 1108 (M.D.La. 1985); *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466 (N.D.Ill.1985).

■ The plaintiff must also allege that it has sustained some injury to its business or property which injury was caused by the violation of the subsection of section 1962. However, the plaintiff need not plead or establish a racketeering injury distinct from the damages occurring as a result of racketeering activities of the defendants. *Sedima, SPRL v. Imrex Co.,* 473 U.S. at ——, 105 S.Ct. at 3285, 87 L.Ed.2d at 358; *Alcorn County Miss. v. U.S. Interstate Supplies, supra* 731 F.2d at 1167; *Hirt v. UM Leasing Corp.,* 614 F.Supp. 1066 (D.C. Neb.1985); *Wilcox v. Ho-Wing Sit,* 586 F.Supp. 561 (D.C.Cal.1984); *Clute v. Davenport Co.,* 584 F.Supp. 1562 (D.Conn. 1984). In sum, to state a valid claim under RICO, a plaintiff must meet the pleading requirements of alleging a racketeering activity that injures the plaintiff in his business or property.

The plaintiff contends that the racketeering activity requirement has been set forth properly in its complaint inasmuch as the conduct of the defendants has allegedly violated subsection (a) and (c) of section 1962, the pertinent text of which follows:

(a) It shall be unlawful to any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful

debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, or do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

.    .    .    .    .

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order for the plaintiff to state a claim for a violation of subsections (a) and (c), the amended complaint in the instant cause must assert, (and Central States will eventually have to prove) that, to the detriment to its business or property, that (1) defendants have established an enterprise which affects interstate commerce, and (2) through their association with or employment by this enterprise each defendant has participated in a pattern of racketeering activity by committing at least two indictable acts as designated in 18 U.S.C. § 1961(1). *Sedima, SPRL v. Imrex Co.,* 473 U.S. at ——, 105 S.Ct. at 3285–86, 87 L.Ed.2d at 358–59. Therefore, this court must examine the amended complaint to determine if the plaintiff has properly alleged a sufficient factual basis which could sustain a cause of action under subsections (a) and (c) of section 1962.

In this regard, the defendants argue that the amended complaint is deficient in two areas and is therefore subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, defendants claim that the amended complaint fails to adequately plead the existence of an enterprise. In addition, the defendants assert that plaintiff has failed to adequately allege the requisite fraudulent predicate acts of racketeering.

## II.

The first area of inquiry involves the question of whether Central States has alleged an "enterprise" within the meaning of RICO. An "enterprise" is defined by statute to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. In this action, the defendants have argued that the enterprise requirement has not been adequately identified in the amended complaint, and alternatively, that any enterprise referred to is one of the named defendants, which is impermissible under RICO.

In its amended complaint, the plaintiff identifies Texas Can and John Howington dba J. Howington Enterprises, Inc. (hereinafter Enterprises) as enterprises as defined under RICO. Both of these entities are also named as defendants in this action. In addition, the plaintiff states in the amended complaint that "Howington, Koenig, Wertz, Texas Can and Enterprises are a group of persons associated in fact and thus constitute an enterprise as defined in 18 U.S.C. § 1961(4)."

Recently, several circuits have specifically held that an enterprise and a RICO defendant may not be a single entity. The basis for these holdings is that under section 1962(c) a "person" must be employed by or associated with an "enterprise." *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308 (2d Cir.1985); *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984); *Haroco v. Am. Nat. B & T Co. of Chicago,* 747 F.2d 384, 399–402 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. ——, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984); *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190–91 (4th Cir.1982) *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg,* 685 F.2d 1053, 1061–62 (8th Cir.1982), *aff'd en banc,* 710 F.2d 1361, *cert. denied sub. nom., Pruden-*

*tial Insurance Co. v. Bennett*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). *Also see Griffin v. O'Neal, Jones & Feldman, Inc.*, 604 F.Supp. 717, 721 (S.D.Ohio 1985); *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1517 (D.N.J.1985); *Umstead v. Durham Hosiery Mills, Inc.*, 592 F.Supp. 1269 (M.D.N.C.1984). The requirement of a distinction between the enterprise and the person conducting the affairs of that enterprise is supported by the plain language in section 1962(c), which "contemplates that the 'person' must be associated with a separate 'enterprise' before there can be RICO liability on the part of the 'person'." *B.F. Hirsch v. Enright Refining Co., Inc., supra*, 751 F.2d at 633. In addition, the distinction furthers the intent of Congress by placing liability on the entity or "person" which or who causes the violation and away from the instrument used in the pattern of racketeering. The Second Circuit stated this distinction as follows:

> Moreover, requiring a distinction between the enterprise and the person comports with legislative intent and policy. Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity. *See, e.g., B.F. Hirsch*, 751 F.2d at 633–34; *Haroco*, 747 F.2d at 401. Thus, we follow the majority view and hold that under section 1962(c) a corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity.

*Bennett v. United States Trust Co. of New York, supra*, 770 F.2d at 315.

■ The allegations that Texas Can or Enterprises alone are the enterprises envisioned under section 1962 do not satisfy the requirements of a distinct enterprise *and* a person associated with the enterprise. A corporate entity must be associated with an enterprise that is not the same corporation.

*Haroco, Inc. v. American National Bank & Trust Co., supra* 747 F.2d at 400. Thus, Texas Can or Enterprises could not simultaneously be the person committing the predicate acts and be the enterprise associated with themselves. However, Central States has also alleged the existence of an enterprise wherein Texas Can and Enterprises are both asserted to be persons associated in fact with Howington, Loenig and Wertz. This unnamed association of all the defendants could, construing the pleadings in a manner most favorable to the plaintiff, constitute an enterprise within the provisions of section 1962.

### III.

The next area of inquiry presents the question of whether Central States has properly stated an allegation that the defendants have participated in a pattern of racketeering activity. In this regard, the defendants contend that the plaintiff has failed to allege the claimed fraudulent predicate acts of racketeering, thereby subjecting the amended complaint to a dismissal for failure to state a claim.

In a RICO action, racketeering activity is defined as "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), ... [and] section 2314 and 2315 (relating to interstate transportation of stolen property) ...." 18 U.S.C. § 1961(1). A "pattern of racketeering activity is defined by statute as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

In this action, Central States asserts that it has alleged in the amended complaint all of the requisite elements of a pattern of racketeering activity. Specifically, the plaintiff claims that on at least two occasions the defendants have committed acts

of mail fraud and wire fraud which would be indictable under 18 U.S.C. §§ 1341 and 1343. The plaintiff also claims that defendants have stolen and transported in interstate commerce property belonging to Central States, an activity which is an indictable offense under 18 U.S.C. §§ 2314 and 2315. Each of these claims will be examined to determine if the predicate acts of racketeering have been properly alleged.

■ Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, a RICO claim predicated upon the alleged mail or wire fraud must be set forth with particularity to satisfy Rule 9(b). *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984); *Moss v. Morgan Stanley, Inc., supra*, 719 F.2d at 17; *Bennett v. Berg, supra*, 685 F.2d at 1062 *aff'd en banc*, 710 F.2d 1361 (8th Cir.), *cert. denied sub nom., Prudential Insurance Co. v. Bennett*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Lopez v. Dean Witter Reynonds, Inc.*, 591 F.Supp. 581, 585 (N.D. Cal.1984); *Saine v. A.I.A, Inc.*, 582 F.Supp. 1299, 1303 (D.Colo.1984); *County of Cook v. Midcon Corp.*, 574 F.Supp. 902, 920 (N.D.Ill.1983); *Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352, 356 (E.D.Mich.1983); *Windsor Associates, Inc. v. Greenfeld*, 564 F.Supp. 273, 279–80 (D.Md.1983); *Eaby v. Richmond*, 561 F.Supp. 131, 136 (E.D.Pa.1983).

■ The crime of mail fraud encompasses two well-defined elements. The defendants must first have devised a scheme or artifice to defraud and then used the mails for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *Bender v. Southland Corp., supra*, 749 F.2d at 1215–16; *United States v. Talbott*, 590 F.2d 192, 195 (6th Cir.1978); *United States v. Schilling*, 561 F.2d 659, 661 (6th Cir.1977). The elements of the crime of wire fraud also encompasses a scheme to defraud; however, instead of the

use of the mails, some use of the interstate telecommunications system must be utilized in the execution of the scheme. *United States v. Barta*, 635 F.2d 999 (2d Cir. 1980). The courts have uniformly given the same construction to the language in both the mail and wire fraud statutes with the sole distinction between the crimes being the interstate communication device utilized by the alleged offender. *See United States v. Computer Sciences Corp., supra*, 689 F.2d at 1188; *United States v. Louderman*, 576 F.2d 1383, 1387 n. 3 (9th Cir. 1978), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 498–99 (N.D.Ill.1985).

When alleging wire and mail fraud as predicate acts of racketeering, a claimant must, pursuant to Rule 9(b), describe with particularity the circumstances constituting the fraud. The Eighth Circuit described these circumstances in a RICO action to, at a minimum, "include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg, supra* 685 F.2d at 1063. *Accord Harris Trust and Sav. Bank v. Ellis*, 609 F.Supp. 1118, 1123 (N.D.Ill.1985); *McLendon v. Continental Group Inc.*, 602 F.Supp. 1492, 1506, 1507 (D.N.J.1985); *Dean Witter Reynolds*, 591 F.Supp. 581, 585 (N.D.Cal.1984); *Saine v. A.I.A., Inc., supra*, 582 F.Supp. at 1303; *County of Cook v. Midcon Corp., supra*, 574 F.Supp. at 920.

■ Reviewing the amended complaint in this manner, it is clear that the plaintiff has failed to allege the time, place and content of any use of the mails or wire communication device. Instead, Central States has alleged in Count I of the amended complaint the following:

35. From at least June 1981 until the date of the filing of the original Complaint, Howington has on at least two occasions used interstate wires or inter-

state mails, or both, to engage in a scheme to defraud or to obtain by false pretenses property belonging to Central States. This property included valuable trade secrets of Central States. The property also included corporate opportunities, corporate facilities, cash, travel expenses and working time both of Howington and other Central States' employees. These activities are actions indictable under 18 U.S.C. §§ 1341 and 1343 and thus constitute a pattern of racketeering activity under 18 U.S.C. § 1961(5).

Identical allegations are made against Mr. Koenig and Texas Can in Count III and IV respectively.

■ These allegations do not comply with the requirements of Rule 9(b) nor do they identify or describe the claimed mail or wire fraud as set forth in *Bennett v. Berg, supra.* Instead, the allegations are a mere conclusion that over a period of approximately four years, Mr. Howington or Mr. Koenig or Texas Can used either the interstate wires or mails on at least two occasions. Further, the allegations do not identify either the place or the content of the alleged false representation. A mere conclusory statement of mail and wire fraud is not sufficient to support a RICO claim. *Harris Trust and Sav. Bank v. Ellis, supra,* 609 F.Supp. at 1123; *Bennett v. E.F. Hutton Co., Inc.,* 597 F.Supp. 1547, 1560 (N.D.Ohio 1984). Thus, this court must find that Central States' wire fraud and mail fraud allegations are insufficient as presently pled and that any RICO claim based upon these predicate acts would not overcome a motion to dismiss.

The plaintiff argues that at this stage of the proceedings it does not have to allege in its pleadings the time, date and places of the various wire and mail fraud violations, since it has by alternative means, injected precision and some degree of substantiation into its allegations of mail and wire fraud. Specifically, Central States relies upon the following Third Circuit language:

Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. In the present case, Seville adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud. Moreover, Seville divided this list into five "exhibits" and identified which pieces of equipment were the subject of which alleged fraudulent transaction. The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation. In sum, we conclude that Seville has alleged the fraud-based offenses with sufficient particularity to withstand a motion to dismiss under Rule 9(b).

(Footnote omitted.)

*Seville Indus. Machinery v. Southmost Machinery, supra* 742 F.2d at 791. However, even applying the above test to the plaintiff's amended complaint, the pleading must fail. Unlike the pleadings in *Seville,* there is neither precision nor some measure of substantiation of the allegations of mail and wire fraud in the plaintiff's amended complaint.

As discussed in *Seville,* Rule 9(b) requirements mandate that the plaintiff's pleadings place the defendants on notice of the precise misconduct or fraudulent acts which are being claimed. In *Seville,* the plaintiff had alleged a RICO violation

wherein the defendants fraudulently induced it into entering into a joint venture whereby the defendants would purchase on consignment from the plaintiff machinery for resale. Under the terms of this venture, the plaintiff was to be paid after the machinery was resold by the defendants, however, the defendants never intended to pay for the machinery. Instead, all proceeds for the sale of the machinery was converted to the defendants own use. In addition to these allegations, the plaintiff attached various schedules to its complaint which detailed the exact equipment shipped to the defendants which was the subject of each alleged fraudulent transaction. Thus, the defendants were placed on notice of the exact subject matter of the alleged fraud and the approximate time and place of the transactions.

In this action the alternative to the pleading requirements of *Bennett v. Berg, supra,* of injecting precision and some degree of substantiation into the plaintiff's allegations, is not present in the amended complaint. As previously stated, the amended complaint does not identify the time, place and content of the alleged false representations or the identity of the person or persons making the representations. Unlike *Seville* where the property at issue was clearly identified as to each fraudulent transaction, Central States has only identified the property which allegedly was appropriated as its "trade secrets" and other "corporate assets." A mere allegation concerning the appropriation of these assets, absent some specificity as to the nature and the subject of the alleged misrepresentations and frauds, does not place the defendants on proper notice of the misconduct of the mail and wire fraud with which they are charged. Thus, the amended complaint as presently written does not comply with the requirements of Rule 9(c) as it relates to allegations of mail and wire fraud.

The plaintiff has also alleged that the defendants have, on two or more occasions, knowingly transported or received goods stolen in interstate commerce, acts indictable under 18 U.S.C. §§ 2314 and 2315.

The elements of an act indictable under 18 U.S.C. §§ 2314 and 2315 are (1) the interstate transportation of stolen, converted or fraudulently taken goods of at least $5,000 value (2) with a fraudulent intent. *United States v. Freeman,* 619 F.2d 1112 (5th Cir. 1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *United States v. Mitchell,* 588 F.2d 481 (5th Cir.1979), *cert. denied,* 442 U.S. 940, 99 S.Ct. 2881, 61 L.Ed.2d 310 (1979); *United States v. Long Cove Seafood, Inc.,* 582 F.2d 159 (2d Cir. 1978). Specifically, Central States contends that the defendants misappropriated valuable trade secrets, corporate opportunities and other corporate assets to establish and operate their racketeering enterprise.

Consistent with the pleading requirements for the RICO violations of wire fraud and mail fraud, the plaintiff must allege the fraudulent taking of its property with the specificity set forth in Fed.R. Civ.P. 9(b). *Bender v. Southland Corp., supra* 749 F.2d at 1216; *Lopez v. Dean Witter Reynolds, Inc., supra* 591 F.Supp. at 585. Hence, the amended complaint must be examined to determine if the fraudulent taking of property has been sufficiently pled with the detail necessary to give the defendants notice of the precise misconduct or fraudulent acts being claimed.

The property asserted to have been stolen or fraudulently taken by the defendants consists of trade secrets, corporate business opportunities and other corporate assets such as expenses paid by the plaintiff which benefited the defendants. In reviewing the pleadings pursuant to the Rule 9(c) criteria, the court is unable to find that the plaintiff has set forth sufficient facts to satisfy its pleading requirements.

The trade secrets referred to by the plaintiff concern the activities of Mr. Koenig when he conducted various market studies as a consultant for Central States. The court does not dispute the fact that a trade secret can be a valuable asset which

if stolen or fraudulently obtained, could under the proper circumstances constitute a violation of 18 U.S.C. §§ 2314 and 2315. *United States v. Greenwald,* 479 F.2d 320 (6th Cir.1973), *cert. denied,* 414 U.S. 854, 94 S.Ct. 154, 38 L.Ed.2d 104 (1974); *United States v. Seagraves,* 265 F.2d 876 (3d Cir. 1959). However, the statement of Central States in its amended complaint that the market studies are valuable and are a trade secret is a conclusion and not a factual allegation. Such a conclusion does not meet the pleading requirement necessary to satisfy the elements of a violation of 18 U.S.C. §§ 2314 and 2315, since there is no allegation which would indicate the value of the property. In addition, there is no allegation in the amended complaint that there has been an interstate transportation of the property or that the property was appropriated with the requisite fraudulent intent. It is not enough to merely state that a trade secret was appropriated in violation of the statutes. Instead, the plaintiff must identify in its pleadings the elements of a violation of §§ 2314 and 2315 with the particularity that would apprise and notify the defendants of the alleged misconduct.

■ Central States' claim involving the appropriation of a corporate business opportunity is also deficient. This allegation centers on the activities of Mr. Howington in failing to apprise the plaintiff of the possibility of doing business with the seafood cannery in Texas and various other unidentified business opportunities. This assertion does not satisfy the elements of 18 U.S.C. §§ 2314 and 2315 in that the pleading does not set forth, in this setting, an actionable property right stolen or fraudulently obtained by the defendants. In addition, if the alleged corporate business opportunity constitutes a property right fraudulently obtained, the amended complaint does not state a value for that right nor does it allege that this "opportunity" was transported interstate.

The remaining property allegedly stolen or fraudulently obtained by the defendants involves the use by Mr. Howington and Mr. Koenig of corporate assets while still employed by Central States. These assets involve their receipt of wages and/or salaries for time that should have been expended on efforts which would have benefited the plaintiff. Again, however, these assertions do not set forth the requisite specificity of the elements of the crime which is needed to inform the defendants of the charges being brought against them. Therefore, the amended complaint does not presently set forth a claim of a RICO violation based upon the interstate transportation of stolen property. Since the amended complaint does not allege with the specificity required by Rule 9(c), the violation of at least two indictable acts as designated in 18 U.S.C. § 1961(1), the plaintiff has presently failed to state a RICO claim based on subsections (a) and (c) of 18 U.S.C. § 1962.

### IV.

■ The plaintiff has further alleged that the racketeering activity requirement of a RICO claim has been pled since the conduct of the defendants has violated 18 U.S.C. § 1962(d). In order to state a RICO claim for a violation of subsection (d) the plaintiff must allege that the defendants conspired "to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The allegation of a conspiracy to violate one of the substantive offense provisions in the other subsections of section 1962 is a separate offense punishable under RICO. *See United States v. Qaoud,* 777 F.2d 1105 (6th Cir.1985). In this regard, Central States has alleged the following:

8. Howington and Koenig, individually and in concert with each of the other defendants, formulated a scheme designed to defraud Central States and to obtain its property by false pretenses, including the establishment and operation of a competing business. Howington, Koenig and each of the defendants engaged in acts in furtherance of that scheme. Those acts included efforts to acquire control of the Van Camp can manufacturing operations, to provide

cans to Sun Harbor Industries, Inc., to purchase from and to sell cans for competitors of Central States, to establish business relations with suppliers and customers of Central States and to interfere with the loyalty of employees to Central States.

A RICO conspiracy allegation requires at least, the pleading of the existence of one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy. *Seville Indus. Machinery v. Southmost Machinery, supra* 742 F.2d at 792 n. 8; *United States v. Riccobene,* 709 F.2d 214 (3d Cir.1983), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Sutherland,* 656 F.2d 1181 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982); *Saine v. A.I.A., Inc., supra* 582 F.Supp. at 1307. The above allegations of the plaintiff do not set forth a proper claim of a conspiracy. Instead, the statement is a mere conclusion and does not permit the defendants to identify the conspiracy of which they are alleged to be a part.

For the reasons set forth herein, the court finds that the amended complaint is deficient in that it fails to comply with the requisite pleading requirements to sustain a claim under RICO. Therefore, the court, in its discretion, hereby grants Central States' 30 days leave to amend the pleadings in order to properly file an action which will confirm to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

## V.

The final issue which must be addressed by the court involves the defendants' motion for an award of attorney fees as a sanction against the plaintiff and counsel for the filing of this action. Rule 11 of the Federal Rules of Civil Procedure requires that every pleading, motion or other paper which is submitted to the court be signed by an attorney. In addition, the rule provides as follows:

The signature of an attorney ... constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after *reasonable inquiry* it is *well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and *that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.* (Emphasis added.)

Further, the rule states that any attorney who violates the provisions of this rule *shall* be subject to an appropriate sanction, "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

A motion for sanctions under Rule 11 should not be lightly made by a party or granted by a court. This court is very much aware of the serious effect the granting of the sanction may have upon a lawyer's professional record and reputation in the community. In determining the appropriateness of imposing any sanctions under Rule 11 in this action, the court has reviewed with care the Advisory Committee Notes to the rule which state in pertinent part:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on

**1560**

a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Applying this criteria to the present action, an award of sanctions is clearly not warranted.

In recent years the number of filings of civil cases and the use of RICO has grown significantly and in a manner "quite different from the original conception of its enactors." *Sedima, SPRL v. Imrex Co., supra,* 473 U.S. at ——, 105 S.Ct. at 3287, 87 L.Ed.2d at 361. As a result of this increased utilization of civil RICO actions the courts and the bar have been confronted with numerous innovative legal theories and factual settings involving RICO. In this action, the pleadings reveal that all parties have vigorously attempted to litigate an action in an area of the law that is not well settled under an unusual factual setting. Under these circumstances, the awarding of a sanction is not justified and would only serve to chill the enthusiasm of counsel in prosecuting a civil RICO case under a factually novel theory.

Accordingly, the court finds that the amended complaint does not allege with the specificity required under Rule 9(c) a claim under civil RICO. Therefore, the plaintiff is hereby ordered to amend its pleadings within 30 days or the federal claims shall be dismissed for failure to state a claim upon which relief can be granted. The court further finds that sanctions under Rule 11 would be inappropriate.

IT IS SO ORDERED.